**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEAST INVESTMENTS, LLC, | |
| *Plaintiff,* | |
| - v. - | Case No.  _____ |
| CELEBRITY VIRTUAL DINING, LLC, VIRTUAL CONCEPTS HOLDINGS, INC., and VIRTUAL DINING CONCEPTS, LLC, | |
| *Defendants.* | |

## COMPLAINT

Plaintiff Beast Investments, LLC ("Beast Investments"), by and through its attorneys, for its Complaint against defendants Celebrity Virtual Dining, LLC ("CVD"), Virtual Concepts Holdings, Inc. ("Holdings"), and Virtual Dining Concepts, LLC ("VDC") (collectively, "Virtual Dining Concepts"), alleges as follows:

### NATURE OF THE ACTION

1.      When Joe DiMaggio was asked why he hustled on every play of every game, he responded that "there is always a kid who may be seeing me for the first time. *I owe him my best.*" This encapsulates the philosophy that one of the most accomplished and prolific online content creators in the world, Jimmy Donaldson - a.k.a. MrBeast- brings to everything he does, from his global YouTube channels to his other business ventures. It is the reason that "MrBeast" is of one of the most recognizable and valuable brands in the world. MrBeast's YouTube channel (which has over 172 million subscribers) ranks as the third-most subscribed channel on the platform, ranks number 1 overall for individual creators, and his earnings are estimated to be the highest of any social media creator. However, it is his philanthropy which sets him apart from other social media superstars. Named by *Time* magazine as one of the world's 100 most influential people in 2023, MrBeast has used his online platform to raise tens of millions of

dollars for charitable causes, donate over 6 million pounds of food through his non-profit organization Beast Philanthropy, and help countless individuals and small businesses in need.

2.      In 2020, the global COVID-19 pandemic crippled huge swaths of the economy. While small businesses across industries were feeling the brunt of the pandemic, the restaurant industry in particular faced a sudden threat to its very existence - the inability to service customers in brick-and-mortar locations. At the same time, MrBeast was planning to launch a new business that would be entirely aligned with his philanthropic mission, in that it could help thousands of restaurants bring in revenue during the pandemic that they would not otherwise have been able to do.

3.      Specifically, in 2020, MrBeast contracted with Virtual Dining Concepts to launch and run a "virtual dining" brand called MrBeast Burger. The goal of the business was simple: relying entirely on the strength of MrBeast's brand, the business would create a virtual restaurant with a selection of MrBeast-branded food items, but would then partner with existing restaurants who would prepare those items and share in a significant portion of the revenue from their sales. The business model would not compete with its partner restaurants, but would instead generate significant additional revenue for them that did not require brick-and-mortar service (the menu items are only ordered online or through food delivery applications such as Grubhub, DoorDash, and Uber Eats).

4.      Because quality and fan/customer satisfaction are paramount above all else for MrBeast, he expected that his fans would be the recipients of excellent customer service and a superior branded food product. Unfortunately, however, because Virtual Dining Concepts was more focused on rapidly expanding the business as a way to pitch the virtual restaurant model to other celebrities for its own benefit, it was not focused on controlling the quality of the MrBeast Burger customer experience and products. This is despite numerous objections by MrBeast, whose complaints about quality control fell on deaf ears. As a result, MrBeast Burger has been regarded as a misleading, poor reflection of the MrBeast brand that provides low-quality

products to customers that are delivered late, in unbranded packaging, fail to include the ordered items, and in some instances, were inedible. As just some examples:

- Customers have referred to the burgers as being "disgusting," "revolting," and "inedible." They have claimed that "it is sad that MrBeast would put his name on this," "MrBeast is being cancelled over burgers;" "never had something so nasty;" "inaccurate marketing;" "Orlando's worst burger;" "big name, poor food;" "very upsetting for the high price;" and "likely the worst burger I have ever had." The problem is perhaps best exemplified in the following Reddit post:

 r/Wellthatsucks
by killaqueenmac • 7 mo. ago 

**Finally ordered our first Mr. Beast burger and then realized after the first bite that it was mostly just raw meat :(**



3

- One New York reviewer, echoing the sentiments of thousands, stated that MrBeast Burger was "'the absolute worst burger I've ever eaten in my entire life! It was like eating spoonfuls of garlic powder. fries were soggy and ice cold. don't waste your money;"

- More than half of the MrBeast Burger virtual restaurants have less than two (out of five) stars, which is well-below the median score of four stars across the platform;

- One father of two felt as though he had "let his children down" by ordering MrBeast Burgers when he received terrible quality food in unbranded packaging that he was able to trace back *to a 7-11. See* **Exhibit A**. Customers do not expect their MrBeast burger to come in a 7-11 bag. That is not what anyone expects from a MrBeast-branded product;

- Equally disturbing, many customers believe that MrBeast is personally responsible for this mess, as evidenced by statements such as, "HOW COULD YOU DO THIS TO ME JIMMY?"

Attached as **Exhibit B** hereto is a compilation of just a handful of the *thousands* of negative reviews that have been published online.

5.     There are literally thousands of negative reviews, articles, and comments from people who are deeply disappointed by the fact that MrBeast would put his name on this product. Because the entire business is based on the tremendous global value of the MrBeast brand, it is MrBeast himself, and not Virtual Dining Concepts, who has borne the brunt of the (justified) attacks and criticisms. MrBeast made every effort to cause Virtual Dining Concepts to fix these significant quality control problems as soon as he learned of them, but they refused and/or were incapable.

6.     As a result, Virtual Dining Concepts has caused material, irreparable harm to the MrBeast brand and MrBeast's reputation, not only through its abject failure to ameliorate the significant quality control problems with the virtual business, but also through other material breaches of the agreements with MrBeast. By way of example, Virtual Dining Concepts repeatedly denied MrBeast his valuable approval rights by posting his name, image, and brand on social media and elsewhere without first obtaining his written approval and consent. Further,

4

in violation of their agreements and trademark law, Virtual Dining Concepts registered various trademarks throughout the world using MrBeast's name and brand, without any right to do so and without his consent or knowledge (and they listed themselves as the sole owners of the trademarks).

7.      To be clear, while this business has made millions of dollars, *MrBeast has not received a dime*.

8.      Unfortunately, due to the material, irreparable harm to MrBeast's reputation and brand caused by Virtual Dining Concepts' failure to uphold its end of the parties' agreement, MrBeast has no choice but to seek, *inter alia*, a judicial declaration that he has the right to terminate the MrBeast Burger business, and damages from the harm caused by Virtual Dining Concepts' multiple material breaches of the agreements between the parties. Consistent with MrBeast's philosophy, if the MrBeast Burger virtual business cannot provide the highest level of service and products to its customers, then it should not continue.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000.

10.      Venue of this action in New York County is proper pursuant to 28 U.S.C. § 1391. The Endorsement and Services Agreement entered into between Beast Investments and CVD on September 3, 2020 provides that all proceedings to resolve disputes thereunder shall be initiated and conducted solely in the state or federal courts of New York, County of New York.  In entering into the Endorsement Agreement, CVD accepted and submitted to the jurisdiction of this Court.  *Id.*  Defendants VDC and Holdings are likewise subject to the jurisdiction of this Court because VDC, the operating company for the Virtual Dining Concepts brand, is an affiliate of Defendant CVD and Holdings is the sole owner of VDC.

## THE PARTIES

11.      Plaintiff Beast Investments is a limited liability company organized under the laws of North Carolina. Beast Investments is a wholly owned subsidiary of BBurger 1456 & Co.,

a corporation organized under the laws of Delaware.  Non-party Jimmy Donaldson is the majority owner of BBurger 1456 & Co.

12.     Defendant CVD is a limited liability company organized under the laws of Florida.  CVD is wholly owned by Defendant VDC, a limited liability company organized under the laws of Florida.  VDC, in turn, is wholly owned by Defendant Virtual Holdings, a corporation organized under the laws of Florida.  VDC is the operating company for the Virtual Dining Concepts brand.

13.     Plaintiff is informed and believes, and based thereon alleges, that each Defendant at all times mentioned in this Complaint was the agent, employee, partner, joint venture, alter ego, and/or employer of the other Defendants and was at all times herein mentioned acting within the course and scope of that agency, employment, partnership, ownership or joint venture. Plaintiff is further informed and believes, and thereon alleges, that the acts and conduct of each Defendant were known to, authorized by and/or ratified by the other Defendants, and each of them.

**FACTUAL ALLEGATIONS**

*Establishment of the MrBeast Burger Business*

14.     On September 3, 2020, Beast Investments and CVD entered into an Endorsement and Services Agreement (the "Endorsement Agreement") in order to establish the MrBeast Burger business. Pursuant to that agreement, the business would be run by Virtual Dining Concepts, who purported to be expert in the "virtual dining" business, which involves the creation of virtual dining brands that operate in a delivery-only model. Beast Investments, in turn, granted Virtual Dining Concepts the right to utilize MrBeast's "name, images, likeness, voice, picture and photograph, signature, biographical data, endorsements and statements" (collectively the "Brand Attributes") to advertise, market, and promote the MrBeast Burger virtual restaurant brand and operations.

15.     However, because MrBeast has spent years developing his brand into one of the most valuable in the world, and because his brand was a central component of the endeavor's

success, it was an essential component of their deal that MrBeast retain strict control over the use of his name, image, likeness, and brand by the MrBeast Burger business.

16.     Therefore, pursuant to the Endorsement Agreement, MrBeast retained all of his own intellectual property rights and had strict, non-waivable approval rights over the use of his image and brand in connection with all facets of the business. All uses of the Brand Attributes "shall be subject to the prior, reasonable approval of [Beast Investments]," which approval *must be in writing*. Endorsement Agreement at ¶ 4. Without these valuable approval rights, MrBeast would not have entered into the Endorsement Agreement.

***Launch of the Virtual Business, Rapid Expansion, and Discovery of Significant Quality Control Issues***

17.     MrBeast Burger publicly launched its virtual business in December 2020.  To announce the launch, MrBeast created a MrBeast Burger pop-up restaurant and filmed a video titled "I Opened A Restaurant That Pays You To Eat At It."  MrBeast manned the restaurant with his friends and gave away free MrBeast Burgers all day.  He also generously handed out stacks of cash and gave free AirPods and iPads to many customers.  He even gifted a brand-new car to a customer who got side-swiped while waiting in line for the drive-thru.  Evidencing the popularity of the concept and the strength of the MrBeast brand, over 1000 cars were lined up before the MrBeast Burger pop-up even opened in the morning.  At the end of the video, MrBeast announced the launch of the MrBeast Burger virtual business.  The video became viral and now has over 156 million views. MrBeast Burger was an immediate success, selling a million burgers in just its first three months.

18.     Upon information and belief, at the time MrBeast Burger launched, Virtual Dining Concepts did not have any other celebrity collaborations that could even come close to bringing in the level of revenue that was achievable through MrBeast Burger. Instead, Virtual Dining Concepts sought to use the MrBeast Burger model (and the business' success) as a way to attract other celebrities who might wish to partner with Virtual Dining Concepts in the virtual dining space. To that end, it was in the interest of Virtual Dining Concepts to capitalize on

MrBeast Burger's initial success and expand as rapidly as possible, establishing partnerships with restaurants in hundreds of new locations across the globe. In fact, MrBeast Burger was described by *Forbes* magazine as "the fastest-growing restaurant brand in the country."

19.     In 2021, MrBeast Burger's first full year in operation, Virtual Dining Concepts opened 1,000 virtual locations. In 2022, Virtual Dining Concepts nearly doubled the number of MrBeast Burger virtual locations, expanding to 1,700.  As stated earlier, to be clear, while Virtual Dining Concepts has made millions of dollars through this business, *Beast Investments has not been paid a dime*. This is true even though Beast Investments is owed royalties and distributions under the Endorsement (*see* ¶5) and Letter Agreements (*see* p. 4- "Business Distributions").

20.     However, while this rapid expansion might have been a useful selling point for Virtual Dining Concepts in its attempt to secure other celebrity endorsement deals, it was not in the best interest of MrBeast Burger, the MrBeast brand, the partner-restaurants, or, most importantly, the customers, as it soon became apparent that in focusing first and foremost on growth, Virtual Dining Concepts lost sight of the most important aspect of the business: controlling the quality of the customer experience and the food products that were offered.

21.     Customers, food reviewers, and the press quickly began to call out (and continue to call out in great numbers) the significant problems with MrBeast Burger, commenting that the business' concept and advertising was misleading, the products were low-quality, orders were consistently late, orders arrived in unbranded packaging, orders failed to include the ordered items, the website functioned improperly, and customers were denied legitimate requests for refunds. Because the MrBeast brand is central to Virtual Dining Concepts' business, it is MrBeast who has borne the consistent, ongoing, painful brunt of the criticisms and ridicule. He has received direct blame from disappointed customers (in addition to the prolific general condemnations about the MrBeast Burger product and brand).

22.     This is precisely why, pursuant to the Letter Agreement described below, Beast Investments has the right to terminate the entirety of the MrBeast Burger business (including the

virtual restaurant) if, *inter alia*, MrBeast Burger materially and irreparably tarnishes MrBeast's reputation.

23.     Upon learning of the significant criticisms of MrBeast Burger and the devastating attacks on his own personal brand and reputation, MrBeast, personally and/or through his representatives, immediately raised concerns with Virtual Dining Concepts, including in regularly weekly or bi-weekly meetings, and sought to correct Virtual Dining Concepts' failure to exercise adequate quality control over the product and the business. Unfortunately, in addition to failing to take steps to improve the quality of the product being delivered to MrBeast customers and fans, Virtual Dining Concepts has continued to use MrBeast's brand, image, and likeness without his prior consent (as is required under their contract) in connection with their relentless, irresponsible expansion across the globe. *See, e.g.*, **Exhibit C**, containing just some examples of this. As a result, the significant, irreparable harm to MrBeast's brand continues to escalate.

### *Expansion Into the Brick-and-Mortar Business*

24.     In 2021, as pandemic-related restrictions were being lifted, MrBeast believed that expansion into the brick-and-mortar business would allow for stricter oversight of customer experience and quality control—something lacking from the virtual experience—as well as provide unique destination-based experiences to MrBeast fans and allow for an expanded menu of healthy and sustainable options.

25.     On January 23, 2022, Beast Investments and Virtual Dining Concepts entered into a Letter Agreement ("Letter Agreement") which set forth the foundation for the expansion of MrBeast Burger into brick-and-mortar and addressed other global aspects of the MrBeast Burger business.[1]

---

[1] The operative agreements relevant to the claims set forth herein are the Endorsement Agreement and the Letter Agreement. The Endorsement Agreement expressly permits its disclosure "to…enforce the terms of this Agreement." The Letter Agreement is vague and ambiguous on this point, so in an abundance of caution, Plaintiff shall not quote directly from that agreement. However, it is available for the Court's consideration, and Defendants are aware which provisions are at issue.

26.     The parties did open one brick-and-mortar location in New Jersey in September 2022. However, because Virtual Dining Concepts was interested only in developing its own virtual branded restaurant business, little attention was paid to brick-and-mortar. As a result, upon information and belief, the MrBeast Burger *virtual* business (and not brick-and-mortar) accounts for approximately 90% of Virtual Dining Concepts' revenues.  No wonder, then, that Virtual Dining Concepts dragged its feet on aggressively focusing on customer service and quality and instead continued to selfishly over-prioritize immediate virtual growth and sales ambitions. Focusing foremost on product quality and customer experience would not have suited Virtual Dining Concepts' own interests, would have cut into its short-term profits, and would have limited its ability to expand the virtual business platform at the cost of MrBeast.

27.     In addition, even though MrBeast retained ownership and strict oversight over the use of his intellectual property, Virtual Dining Concepts registered trademarks for "MrBeast Burger" in the European Union, Canada, Thailand, Singapore, Mexico, and Malaysia as part of its rapid global expansion *without Beast Investments' authorization, consent, or even knowledge*, which was an indisputable breach of the parties' agreements. Pursuant to the Endorsement Agreement, all rights in and to Talent's Attributes "shall continue to be owned exclusively by Licensor and licensed to Company pursuant to this Agreement." (¶10).

28.     Further, as Virtual Dining Concepts expanded, it repeatedly used MrBeast's name, image, and brand in marketing and advertising materials (on social media and elsewhere) without his prior written consent and approval, which was an indisputable breach of the parties' agreements (most recently in advertisements in Mexico and Ireland). Specifically, the Endorsement Agreement provides as follows:

> All of [MrBeast's] Attributes utilized under this Agreement, and all uses of Talent's Attributes, shall be subject to the prior, reasonable approval of Licensor. In addition, all Brand products, Brand packaging materials, and Materials and all uses of the Materials which incorporate Talent's Attributes shall also be subject to the prior, reasonable approval of Licensor….With respect to each instance in which Licensor's approval is required under this Agreement, such approval shall only be valid if given in advance and in writing…." (Endorsement Agreement at ¶4).

29.    It is indisputable that, as the result of Virtual Dining Concepts' failure to correct the serious problems with the customer experience and food products, MrBeast's reputation and brand has, indeed, been materially and irreparably harmed.

30.    Unfortunately, because Virtual Dining Concepts has failed to meaningfully ameliorate the serious issues in customer experience and product quality in the business to Beast Investments' satisfaction, and because they repeatedly have failed to gain the requisite approval of uses of the MrBeast brand and MrBeast's image, name, and likeness, MrBeast has no choice but to seek an order from the Court finding that Beast Investments has the right to terminate its agreements with Virtual Dining Concepts and shut down the MrBeast Burger business.

31.    In addition, Defendants materially breached the express and implied provisions of the parties' agreements  by, *inter alia*, (i)  materially and irreparably tarnishing MrBeast's brand; (ii) filing at least six international trademark registrations based on the Brand Attributes without any right to do so and without advance written approval from Plaintiff; (iii) creating and disseminating advertising and marketing materials that feature the Brand Attributes without first securing the advance written approval of Plaintiff, which conduct is ongoing; (iv) failing to create a jointly-owned entity with Plaintiff as required by the Letter Agreement; (v) failing to create the required operating agreement as required by the Letter Agreement; (vi) failing to permit Plaintiff to appoint a manager of the business as required by the Letter Agreement; (vii) failing to transfer shares of Virtual Concepts Holdings, Inc. to Beast Investments as required by the Letter Agreement; (viii) failing to pay all amounts owed to Plaintiff; and (ix) consistently serving inedible food and providing incompetent service (which irreparably tarnished MrBeast's reputation and frustrated Plaintiff's ability to benefit from the Endorsement and Letter Agreements).

## FIRST CAUSE OF ACTION

### (Declaratory Judgment)

### (Against All Defendants)

32.     Beast Investments realleges and incorporates by reference the allegations set forth above.

33.     Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, this Court is authorized to issue a declaratory judgment.

34.     There is an actual controversy between the parties concerning whether Beast Investments has the right to terminate the Endorsement Agreement and Letter Agreement and to shut down the MrBeast Burger business. Specifically, Plaintiff contends that, pursuant to the Letter Agreement, Beast Investments has the right to terminate the entirety of the MrBeast Burger business (including the virtual restaurant), which includes the Endorsement and Letter Agreements, if, *inter alia*, MrBeast Burger materially and irreparably tarnishes MrBeast's reputation. Plaintiff contends that, as the result of Virtual Dining Concepts' failure to correct the serious problems with the customer experience and food products, MrBeast's reputation and brand has, indeed, been materially and irreparably harmed.

35.     Defendants contest that MrBeast's reputation and brand have been materially and irreparably harmed, and that Plaintiff has the right to terminate the entirety of the MrBeast Burger business, which includes the Endorsement and Letter Agreements.

36.     Plaintiff also contends that it has the right to terminate the agreements based on the multiple, material, uncured (or incurable) breaches of the Endorsement and Letter Agreements by Defendants as set forth in Paragraph 31, above.

37.     Defendants have expressly denied the existence of any breaches and/or that Plaintiff has the right to terminate based on same.

38.     Beast Investments is entitled to a judicial declaration that it has the right to terminate the Endorsement Agreement and Letter Agreement and to shut down the MrBeast Burger business.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

### (Against All Defendants)

39.     Beast Investments realleges and incorporates by reference the allegations set forth above.

40.     Beast Investments and Virtual Dining Concepts are parties to the Endorsement Agreement and the Letter Agreement.

41.     In addition to the express provisions of the written Endorsement Agreement and Letter Agreement, an implied covenant of good faith and fair dealing also existed which precluded Defendants from doing anything that would injure Plaintiff's right to receive the benefits of the written Endorsement and Letter Agreements.

42.     Defendants have materially breached the express terms of the Endorsement Agreement, as well as the implied covenant of good faith and fair dealing, by, *inter alia*, (i) materially and irreparably tarnishing MrBeast's brand; (ii) filing at least six international trademark registrations based on the Brand Attributes without any right to do so and without advance written approval from Plaintiff; (iii) creating and disseminating advertising and marketing materials that feature the Brand Attributes without first securing the advance written approval of Plaintiff, which conduct is ongoing; (iv) failing to pay all amounts owed to Plaintiff; and (v) consistently serving inedible food and providing incompetent service (which irreparably tarnished MrBeast's reputation and frustrated Plaintiff's ability to benefit from the Endorsement and Letter Agreements).

43.     Defendants have materially breached the express terms of the Letter Agreement, as well as the implied covenant of good faith and fair dealing, by, *inter alia*, (i) materially and irreparably tarnishing MrBeast's brand; (ii) filing at least six international trademark registrations based on the Brand Attributes without any right to do so and without advance written approval from Plaintiff; (iii) creating and disseminating advertising and marketing materials that feature the Brand Attributes without first securing the advance written approval of

13

Plaintiff, which conduct is ongoing; (iv) failing to create a jointly-owned entity with Plaintiff; (v) failing to create the required operating agreement; (vi) failing to permit Plaintiff to appoint a manager of the business; (vii) failing to transfer shares of Virtual Concepts Holdings, Inc. to Beast Investments as required by the Letter Agreement; (viii) failing to pay all amounts owed to Plaintiff; and (ix) consistently serving inedible food and providing incompetent service (which irreparably tarnished MrBeast's reputation and frustrated Plaintiff's ability to benefit from the Endorsement and Letter Agreements).

44.     Plaintiff performed all of its obligations under the written Endorsement and Letter Agreements, was excused from doing so, and/or was prevented from doing so by Defendants' conduct.

45.     As a direct and proximate result of the material breaches of the written Endorsement and Letter Agreements, Plaintiff has been damaged in an amount that has not yet been fully ascertained, but which Plaintiff believes to be in excess of Ten Million Dollars. If and when Plaintiff has ascertained the full amount of the damages, it will seek leave of the Court to amend this Complaint accordingly. Beast Investments has suffered and will continue to suffer harm as a result of Virtual Dining Concepts' breaches.  Accordingly, Beast Investments requests an award of money damages in an amount to be determined at trial. Further, Beast Investments seeks preliminary and permanent injunctive relief to prevent Defendants from engaging in any further use of MrBeast's name, image, likeness, intellectual property rights, and/or publicity rights, and the MrBeast brand.

## **THIRD CAUSE OF ACTION**

### **(Accounting)**

### **(Against All Defendants)**

46.     Beast Investments realleges and incorporates by reference the allegations set forth above.

47.     By entering into the Endorsement and Letter Agreements and agreeing to run the operations of the MrBeast Burger business, manage its finances, collect revenue and transmit

profit share to Plaintiff, Defendants knowingly undertook to act on behalf of and for the benefit of Plaintiff with respect to the preparation of accurate financial statements and the payment of the appropriate profit share to Plaintiff.

48.    Defendants have, at all relevant times, maintained exclusive control over the financial books and records pertaining to the calculation of Plaintiff's profit share.

49.    Plaintiff has not yet received any profit share from the business since its inception almost three years ago and does not have access to the relevant books and records of the business. As a result, the balance due from Defendants to Plaintiff can only be ascertained by an accounting because the information necessary to determine the balance due is within the exclusive knowledge of Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Beast Investments prays for an award of the following relief:

1)    For entry of a declaratory judgment order by this Court that that Beast Investments has the immediate right to terminate the Endorsement and Letter Agreements and no further obligation to engage in the MrBeast Burger business with Defendants;

2)    For an accounting of all revenues and expenses of the MrBeast Burger business;

3)    For preliminary and permanent injunctive relief to prevent Defendants from engaging in any further use of MrBeast's name, image, likeness, intellectual property rights, and/or publicity rights, and the MrBeast brand;

4)    Awarding Beast Investments its share of royalty payments and further damages in an amount to be determined at trial;

5)    For compensatory damages in an amount according to proof at the time of trial;

6)    For an award of costs;

7)    For an award of reasonable attorneys' fees;

8)    For an award of pre-judgment and post-judgment interest for the maximum amount allowed by law;

9)    For such other and further relief as the Court deems just and proper, including without limitation costs and attorneys' fees.

### REQUEST FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues.


Dated:  New York, New York
        July 31, 2023                       FRANKFURT, KURNIT,
                                            KLEIN & SELZ, P.C.


                                            By:    /s/ Maura J. Wogan

                                            MAURA J. WOGAN, Esq.
                                            NICOLE BERGSTROM, Esq.
                                            28 Liberty Street
                                            New York, NY 10005
                                            (212) 826-5523
                                            E: *mwogan@fkks.com*
                                            E: *nbergstrom@fkks.com*

                                            LAVELY & SINGER, P.C.


                                    By:     /s/ Michael E. Weinsten
                                            MICHAEL E. WEINSTEN, Esq.
                                            T. WAYNE HARMAN, Esq.
                                            2049 Century Park E.
                                            Suite 2400
                                            Los Angeles, CA 90067
                                            (310) 556-3501
                                            E: *mweinsten@lavelysinger.com*
                                            E: *wharman@lavelysinger.com*
                                            (*pro hac vice* applications to be filed)